UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES HIBLAR,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

CASE NO. C15-5093-BJR-MAT

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY
APPEAL

Plaintiff James Hiblar proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1959.[1]  He graduated from high school and received vocational training in plastering and architectural engineering, and previously worked as a

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1    plasterer.  (AR 40, 173.)

2         Plaintiff filed an application for DIB in October 2011, alleging disability beginning

3    October 18, 2010.   (AR 157-58.)   His application was denied at the initial level and on

4    reconsideration, and Plaintiff timely requested a hearing.  (AR 94-96, 100-06.)

5         On May 24, 2013, ALJ David Johnson held a hearing, taking testimony from Plaintiff,

6    Plaintiff's wife, and a vocational expert (VE).  (AR 32-65.)  On June 28, 2013, the ALJ issued a

7    decision finding Plaintiff not disabled.  (AR 15-26.)

8         Plaintiff timely appealed.  The Appeals Council denied Plaintiff's request for review on

9    January 15, 2015 (AR 1-4), making the ALJ's decision the final decision of the Commissioner.

10   Plaintiff appealed this final decision of the Commissioner to this Court.

11                                   **JURISDICTION**

12        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13                                    **DISCUSSION**

14        The Commissioner follows a five-step sequential evaluation process for determining

15   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

16   be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had not

17   worked after the alleged onset date.  (AR 17.)  At step two, it must be determined whether a

18   claimant suffers from a severe impairment.   The ALJ found severe Plaintiff's lumbar

19   degenerative disc disease, status post laminectomy; right rotator cuff tendinopathy and

20   impingement; and pain disorder/chronic pain syndrome.  (AR 17-19.)  Step three asks whether a

21   claimant's impairments meet or equal a listed impairment.   The ALJ found that Plaintiff's

22   impairments did not meet or equal the criteria of a listed impairment.  (AR 19.)

23        If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 2

residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff able to perform light work as defined in 20 C.F.R. § 404.1567(b), with some additional limitations.  The ALJ found that Plaintiff would need to change positions every 40 minutes, for at least 15 minutes.  He can climb and balance occasionally, and cannot reach overhead for more than two hours of his workday.  He cannot work at unprotected heights, and cannot climb ladders, ropes, or scaffolds.  He can occasionally stoop, kneel, crouch, and crawl.   He cannot have concentrated exposure to vibrations or hazards.  (AR 19-24.)  With that assessment, the ALJ found Plaintiff unable to perform his past relevant work.  (AR 24.)

The ALJ also proceeded in the alternative to step five of the sequential evaluation, where the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as plastic computer board inspector, injection molding machine tender/off bearer, and grain picker.  (AR 24-26.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by (1) excluding his left foot neuroma and depression as severe impairments at step two; (2) failing to "properly assess the impact of [his] pain on his ability to work"; (3) failing to account for all limitations when assessing his RFC; and (4) discounting his credibility. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

Severe Impairments

Plaintiff argues that the ALJ erred in finding his left foot neuroma and adjustment disorder to be medically determinable, but not severe. (AR 17.) The ALJ indicated that the neuroma "was not expected to last more than 12 months" (AR 17) implying that this condition did not satisfy the duration requirement. *See* 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least 12 months). The ALJ also acknowledged Plaintiff's adjustment disorder, but found that because it only resulted in mild limitations in activities of daily living and concentration/persistence/pace, and no limitations as to social functioning and no episodes of decompensation, it was not severe. (AR 17-19.)

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 4

As to the left neuroma, Plaintiff points to medical records showing that he received treatment for this condition for longer than twelve months, which demonstrates that he satisfies the duration requirement.  Dkt. 11 at 3-4 (citing AR 50, 383, 391, 478).  Even if Plaintiff is correct that his neuroma satisfies the duration requirement, he has not shown any prejudice resulted from the ALJ's failure to include neuroma at step two.  The opinion evidence establishing the functional limitations caused by the neuroma indicates that the condition limits Plaintiff's ability to walk more than six hours per workday (AR 580), which is consistent with the ALJ's RFC assessment.  (AR 19.)  Plaintiff testified that his neuroma caused walking limitations and required the use of a cane (AR 49), but the ALJ discounted Plaintiff's credibility for valid reasons, as explained *infra*, and thus was entitled to reject limitations established only by his subjective testimony.  *See Britton v. Colvin*, 787 F.3d 1011, 1013-14 (9th Cir. 2015).

As to the adjustment disorder, Plaintiff's treatment of the ALJ's findings in this regard does not advance his position.  Dkt. 11 at 4-5.  Plaintiff focuses on the evidence supporting a psychiatric diagnosis, but the ALJ acknowledged the diagnosis.  (AR 17.)  The ALJ went on to explain why this condition was not severe, however, and Plaintiff does not address those findings.  (AR 18-19.)  Accordingly, Plaintiff has failed to establish error in the ALJ's decision in this respect.

<u>Adverse Credibility Determination</u>

Two of Plaintiff's assignments of error relate to the ALJ's adverse credibility determination.  Plaintiff challenges the sufficiency of the ALJ's reasons to discount his credibility, and also argues that the ALJ erred in failing to account for his pain when assessing his RFC.  Because, as Plaintiff acknowledges, pain is subjective (Dkt. 11 at 5), both of these assignments of error challenge the sufficiency of the ALJ's adverse credibility determination.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 5

In assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).   Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).

The ALJ provided four reasons to discount Plaintiff's credibility: (1) self-reported capabilities and activities inconsistent with his allegations, (2) evidence of symptom exaggeration and poor effort on testing, (3) inconsistent statements regarding alcohol use, and (4) evidence suggesting a breach of his pain-medication contract.  (AR 22-23.)  Plaintiff's opening brief focuses on the ALJ's first reason — inconsistent activities — but does not address the ALJ's other reasons.  Dkt. 11 at 12-15.

Plaintiff's failure to challenge all of the ALJ's credibility reasons renders any error in the ALJ's assessment of Plaintiff's activities is harmless in light of the ALJ's other valid reasons. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  The ALJ cited evidence that Plaintiff exaggerated his symptoms and put forth poor effort on testing. (AR 23 (citing AR 550-70, 577-81).)   This is a clear and convincing reason to discount a claimant's credibility.  *See Thomas*, 278 F.3d at 959.

The ALJ also described Plaintiff's inconsistent testimony regarding alcohol use.  (AR 23 (referencing AR 42-43, 57 (Plaintiff's 2013 hearing testimony that he had not had alcohol since 2011, and his wife's testimony that he drank "a few weeks ago")).)   This is another clear and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 6

1   convincing reason to discount a claimant's credibility. *See Thomas*, 278 F.3d at 959 (evidence of

2   lack of candor regarding drug and alcohol usage supported ALJ's negative conclusions about

3   claimant's veracity); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

4   Accordingly, even if, as Plaintiff contends, the ALJ erred in relying on his activities (AR

5   22) in the credibility findings, the ALJ's other reasons are clear and convincing and supported by

6   substantial evidence, and thus the error is harmless.  Although Plaintiff emphasizes that various

7   aspects of the record bolster his credibility (Dkt. 11 at 14-15, Dkt. 14 at 3-4), this line of

8   argument only supports an alternative interpretation of the evidence, without establishing error in

9   the ALJ's decision.  Because the credibility findings are the province of the ALJ, not the Court,

10  and Plaintiff has failed to show that the ALJ erred in this regard, the adverse credibility

11  determination should be affirmed. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

12  1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the

13  testimony, and resolve ambiguities in the record.").

14  RFC

15  Plaintiff argues that the ALJ erred in assessing his RFC.  Dkt. 11 at 8-9.  At step four, the

16  ALJ must identify a claimant's functional limitations or restrictions, and assess his work-related

17  abilities on a function-by-function basis, including a required narrative discussion.  *See* 20 C.F.R.

18  §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996).  RFC is the most a claimant

19  can do considering his or her limitations or restrictions.  *See* SSR 96-8p, 1996 WL 374184, at *4.

20  Some of the arguments Plaintiff raises in challenging the RFC assessment reiterate arguments

21  already raised and addressed in the previous sections, *supra*.  Dkt. 11 at 9 (arguing that the ALJ's

22  RFC assessment does not account for limitations Plaintiff described in his testimony).  Plaintiff

23  also mentions that he has "fatigue and sleep issues" (Dkt. 11 at 9), but does not cite medical

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 7

1    opinions indicating particular functional limitations that result, and the Court declines to

2    speculate as to the functional limitations that may result. *See Valentine v. Comm'r of Social Sec.*

3    *Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (where a claimant fails to explain how an ALJ's

4    RFC assessment does not account for various impairments, the court "reject[s] any invitation to

5    find that the ALJ failed to account for [the claimant's] injuries in some unspecified way").

6        Plaintiff does specifically assign error to the ALJ's assessment of his need to change

7    positions during the workday.  Dkt. 11 at 8.  Examining physician Mary Air, M.D., opined that

8    Plaintiff could sit for at least six hours in a workday, and she "would allow the patient breaks for

9    15 minutes at a time after prolonged sitting or prolonged standing, given the restricted lumbar

10   range of motion from his surgery and just to change position for comfort."  (AR 580.)  The ALJ

11   interpreted Dr. Air's opinion to mean that Plaintiff needs a 15-minute "break from the current

12   position the claimant had been in, rather than a break from both sitting and standing."  (AR 24.)

13   The ALJ gave "significant weight" to Dr. Air's opinion, and provided in the RFC assessment

14   that Plaintiff would need to "change positions after 40 minutes for at least 15 minutes."  (AR 19,

15   24.)

16       Plaintiff implies that the ALJ erred in interpreting Dr. Air's opinion, because he posits

17   that Dr. Air found the need for 15-minute *breaks*, not a 15-minute change of position.  Dkt. 11 at

18   8.  Plaintiff's interpretation could be reasonable, but the ALJ's is also reasonable, in light of Dr.

19   Air's explanation: she indicated that one of the reasons why Plaintiff needed 15-minute breaks in

20   prolonged sitting and standing was to allow him to "change position for comfort."  (AR 580.)

21   Dr. Air's opinion, in its entire context, is therefore consistent with the ALJ's interpretation and

22   the ALJ's assessment should not be disturbed.  *See Morgan v. Comm'r of Social Sec. Admin.*,

23   169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 8

interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff also contends that an examination performed by United Backcare suggests that he could sit for no more than 30-40 minutes at a time, and stand for only 45 minutes at a time, but the portion of the record cited by Plaintiff for this proposition does not contain such an opinion.  Dkt. 11 at 8 (citing AR 566).  Another portion of the United Backcare documents does indicate that in June 2012, after 20 days of treatment, Plaintiff could sit for 30-40 minutes at a time and stand for 45 minutes at a time.  (AR 556.)  Although other evidence in the record showed that Plaintiff's condition continued to improve with treatment and medication (*e.g.*, AR 615), even the June 2012 documentation is consistent with the ALJ's RFC assessment, which permits Plaintiff to change positions between sitting and standing every 40 minutes.   Thus, Plaintiff has failed to establish error in the ALJ's RFC assessment related to the need to change positions between sitting and standing.

Lastly, Plaintiff argues that the ALJ erred in omitting concentration limitations, which were indicated in the opinion of examining physician Pamela Moslin, M.D.[2]  (*See* AR 467-72.) Dr. Moslin mentioned concentration deficits (AR 471), yet indicated that Plaintiff "can do simple and repetitive and detailed tasks."  (AR 472.)  The ALJ gave significant weight to Dr. Moslin's opinion (AR 18), but did not explicitly account for her opinion that Plaintiff can perform "simple and repetitive and detailed tasks" in the RFC assessment.  (AR 19.)

The Commissioner argues that any error related to Dr. Moslin's opinion is harmless because the jobs identified at step five were unskilled, with a specific vocational preparation (SVP) level of two.  Dkt. 12 at 13-14.  It is not clear why the Commissioner directs the Court's

---

[2] Even though the ALJ found that the adjustment disorder diagnosed by Dr. Moslin was not severe (AR 17-19), the ALJ's RFC assessment must account for all limitations, even those that are not severe. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 9

attention to the SVP level to evaluate whether a restriction to simple and detailed work is accommodated, because SVP refers to the amount of time necessary to learn how perform a job. Dictionary of Occupational Titles (DOT), App. C, 1991 WL 688702 (4th ed. 1991).   The relevant vocational factor would be, instead, the general education development reasoning level, which measures the level of general education required to perform particular job tasks.  DOT, App. C, 1991 WL 688702.  The jobs identified at step five require reasoning level two, which is consistent with the ability to carry out "detailed but uninvolved written or oral instructions." (AR 25 (citing DOT 726.684-050, 1991 WL 679601 (Jan. 1, 2008); DOT 556.685-038, 1991 WL 683482 (Jan. 1, 2008); DOT 529.687-110, 1991 WL 674762 (Jan. 1, 2008)).)   Because the limitations mentioned by Dr. Moslin are consistent with the jobs identified at step five, the ALJ's error in failing to explicitly account for Dr. Moslin's opinion is harmless.  *See Rounds v. Comm'r of Social Sec. Admin.*, ___ F.3d ___, 2015 WL 4620150, at *5 (9th Cir. Aug. 4, 2015) (discussing reasoning level two).

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be AFFIRMED.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 10

be ready for consideration by the District Judge on **August 28, 2015**.

DATED this 11th day of August, 2015.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 11